Filed 3/25/21  In re L.C. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re L.C. et al., Persons Coming Under Juvenile Court Law.<br><br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>K.C.,<br><br>    Defendant and Appellant;<br><br>L.C. et al.,<br><br>    Appellants. | B307299<br><br>(Los Angeles County Super. Ct. No. 19CCJP04432A-B) |

APPEAL from orders of the Superior Court of Los Angeles County, Victor G. Viramontes, Judge.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Marissa Coffey, under appointment by the Court of Appeal, for Minors.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court sustained a jurisdictional finding of neglect as to mother's daughters, three-year-old L.C. and one-year-old -A.H. (pls see minute orders and briefs; you showed A.H. in the counsel listing), based on mother's abuse of marijuana and history of substance abuse. Several months after asserting jurisdiction, the juvenile court released the children to mother's care and ordered her to participate in several programs. Mother and the minors appeal from the jurisdictional and dispositional orders. They argue substantial evidence does not support the finding that mother's substance use endangered the children. We affirm.

### FACTUAL AND LEGAL BACKGROUND

Mother's problems with controlled substances first came to the attention of the Nevada Child Protective Services Agency (CPS) in 2015.

Mother met with CPS about allegations concerning mother's neglect of her oldest child, her son. Mother told the social worker she used marijuana occasionally to cope with stress and was high "possibly on 'marijuana' " while meeting with the social worker. Mother was asked to submit to a drug test but failed to appear for her appointment. The social worker concluded mother had substance abuse issues. Mother brought son to maternal great-grandmother Elizabeth L.'s home in California, and Elizabeth L. agreed to care for him temporarily.

In 2016, the Los Angeles County Department of Children and Family Services (Department) initiated proceedings due to the parents' failure to make an appropriate plan for son's care.[1] Mother failed to reunify with the child due to her non-compliance with court orders, and in 2018 the juvenile court terminated

---

[1]     Son has a different father than daughters.

jurisdiction over son, granting guardianship to Elizabeth L. with monitored visitation for mother.[2]

At some point, mother returned to Nevada.  In May 2019, the Nevada CPS received a referral concerning mother and her two daughters, then ages one and two.  Mother's boyfriend was arrested at his apartment while daughters were in his care.  Law enforcement had received multiple calls about "drug dealings" at this apartment, and found "a scale along with drugs and other paraphernalia in the home."  When mother arrived, she admitted using marijuana.  One of the officers found a vial of what appeared to be urine, and mother confirmed it was a friend's urine she intended to use to drug test for her job.

CPS concluded there was a "Present Danger" to the daughters as their home was "a known drug house" where drug sales were occurring while the children were present.  Mother was asked to drug test the next day.  Mother represented to CPS that she and daughters were moving in with maternal uncle in Nevada, but they left for California the next day.  Mother dropped daughters off at maternal grandmother's house in Los Angeles with a notarized letter authorizing maternal grandmother to take care of them.  Mother did not submit to the drug test requested by CPS.

A few weeks later, in June 2019, the Department received a referral that mother was neglecting daughters.  At the time, daughters resided in Los Angeles but were not living with mother.  A social worker spoke with several maternal relatives including maternal grandmother who reported that mother had left daughters with her in May 2019.  Maternal grandmother had been caring for the two-year-old while the one-year-old was living

---

[2]	Son is not a party to this appeal, and we do not discuss him further.

3

with maternal great-grandmother Lucy C. When asked why mother had not returned for daughters, maternal grandmother said mother had "an ongoing battle with her bipolar disorder and taking her medication," and may be using drugs because she was always unstable and without housing or a job.

Lucy C. reported she did not know mother's whereabouts, and that mother had asked her to care for the one-year-old because "she wanted to go out with some friends." Maternal uncle reported that mother had "issues" with the children's father "because of drugs and domestic violence." Maternal uncle "suspect[ed] drug use because of [mother's] weight loss and [] she smokes marijuana like there is 'no tomorrow.' "

In July 2019, the social worker spoke to the other maternal great-grandmother, Elizabeth L., who was helping maternal grandmother care for the two-year-old. Elizabeth L. said mother had stopped by once to visit in early July. Mother looked "unkempt" and "smell[ed] like marijuana or cigarettes."

On July 12, 2019, the Department filed a petition alleging the daughters were endangered by mother's marijuana abuse, her mental and emotional problems, and her failure to make an appropriate plan for daughters' ongoing care. The juvenile court detained daughters and ordered monitored visits for mother.[3]

Mother was initially unwilling to meet with the Department, but in September she submitted to a telephone interview with a social worker. Mother denied using marijuana, also stating, " 'If I did, it's perfectly legal.' " Mother also refused to drug test. Both daughters were now in maternal great-grandmother Elizabeth L.'s care.

---

[3] Daughters' father did not make an appearance in the dependency proceedings and is not a party to this appeal.

Elizabeth L. reported that mother had been diagnosed with bipolar disorder and used marijuana "to combat the voices she hears in her head instead of taking her prescribed medication." Maternal grandmother concurred that mother used marijuana to self-medicate for bipolar disorder but believed it did not mitigate her symptoms. Maternal grandmother reported that mother had repeatedly said she was coming to get daughters, even providing "a date when she would return," however, mother "never did . . . show up."

By the time of the January 2020 jurisdiction hearing in the Los Angeles juvenile court, mother's older daughter had just turned three years old; younger daughter was still one year old. Mother submitted documentation to the court from her employer stating she had tested negative for drugs between October and December 2019. Mother also testified that she did not use marijuana and had never used marijuana around the children. She denied having refused to drug test for the Department.

The juvenile court sustained one count of neglect under Welfare and Institutions Code section 300, subdivision (b)(1) based on mother's abuse of marijuana.[4] The court found sufficient evidence of a nexus between the drug abuse and risk to daughters given their young ages and referring to the incident with the Nevada boyfriend when drug paraphernalia was found "out in the home." The court also found that mother's admissions to the Nevada CPS and maternal relatives' statements about mother's drug use provided sufficient evidence in support of this count. The court concluded that mother's concession "that she used other people's urine to test negative . . . undermine[d] the negative drug test that she put before the court." The juvenile

---

[4]     All further undesignated statutory references are to the Welfare and Institutions Code.

5

court then dismissed the allegations of neglect based on mother's mental health and her alleged failure to make an appropriate plan for daughters.

The disposition hearing was held six months later in June 2020. The Department submitted evidence that mother had missed drug tests in January, February, March, April, May, and June 2020. She submitted to a drug test on June 22, 2020 that was negative for all substances. At the hearing, the court confirmed that mother was enrolled in therapy and a parenting program, and ordered that daughters be released to mother on condition that she have appropriate housing. The court also ordered family maintenance services for mother including a drug treatment program, individual counseling, and weekly drug testing. Mother and daughters timely appealed.[5]

## DISCUSSION

Mother and the minors (collectively appellants) argue that substantial evidence does not support the trial court's finding of neglect based upon mother's abuse of marijuana. Appellants acknowledge there was substantial evidence mother used marijuana, but argue there was no evidence she was unable to care for or supervise daughters such that they were at risk of harm. We conclude that substantial evidence supports the trial court's finding that mother abused marijuana and the abuse impaired her ability to care for her daughters who were of tender years. We also conclude substantial evidence also supports the finding that daughters were placed in substantial risk of harm.

Under section 300, subdivision (b)(1), a child is a dependent child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a

---

[5] Father was not present at either the jurisdiction or the disposition hearing. He is not a party to this appeal.

6

result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." (§ 300, subd. (b)(1).) In reviewing a juvenile court's jurisdiction findings, " 'we look to see if substantial evidence, contradicted or uncontradicted, supports them.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

"The finding of dependency cannot be based on substance abuse alone; jurisdiction requires a substantial risk of harm to the child arising from the substance abuse. [Citation.]" (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046.) Cases finding a substantial physical danger " 'tend to fall into two factual patterns. One group involves an *identified, specific hazard* in the child's environment—typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety.' [Citation.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1220.) In cases involving the second group, " 'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm.' [Citations.]" (*Id.* at p. 1219; *In re K.B.* (2021) 59 Cal.App.5th 593, 603.)

Drawing reasonable inferences, we first conclude the record contained substantial evidence that mother abused marijuana. Mother's history of drug use dated back to 2015 when mother admitted to the CPS that she used marijuana, and showed up "high" to a meeting with a social worker. In 2019, when the police found daughters in a "known drug house" in Nevada with drugs and drug paraphernalia, mother again admitted to using marijuana and also to obtaining a friend's urine sample to pass a drug test at work. Mother then skipped the drug test scheduled by CPS and took daughters to California, leaving them with

7

maternal grandmother. When mother first visited daughters a month later, she smelled of marijuana and appeared unkempt. Maternal relatives confirmed mother's use of marijuana: she smoked marijuana continuously ("like there is no tomorrow") and used it ineffectively to self-medicate for serious psychiatric symptoms.

Mother's recurrent substance use over a period of years, her inappropriate use of marijuana to self-medicate, her decision to leave her daughters in a location where drug deals were taking place, and her general refusal to drug test for CPS or the Department provided substantial evidence she abused marijuana.[6] (See *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726 [substance abuse can be shown with "evidence of life-impacting effects of drug use"].) This constituted prima facie evidence of mother's inability to provide regular care resulting in a risk of serious physical harm to daughters.

At the time of the jurisdictional hearing, mother failed to rebut this prima facie evidence. It was reasonable to infer from mother's refusal to drug test for the Department that she was continuing to use drugs. (See, e.g., *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384 [avoiding or refusing to take drug tests without adequate justification, is "properly considered the equivalent of a positive test result"].) Evidence also directly suggested that the effects of mother's drug abuse interfered with her ability to care for daughters: mother repeatedly broke her promise to maternal grandmother to return for them, and maternal grandmother believed mother's drug use led mother to

---

[6] The Department also cites to the numerous drug tests mother missed between the jurisdiction and disposition hearing. Because this evidence was not before the court at the time the court made its jurisdictional findings, we do not consider it when reviewing the evidence supporting jurisdiction.

have an unstable lifestyle.  Mother's prior decision to leave her toddler daughters in an apartment with drug paraphernalia "out in the home" also showed a nexus between her drug abuse and a risk to the children.  (See, e.g., *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993 ["Leaving drugs or drug paraphernalia within the child's reach is an example of negligent conduct that will support section 300, subdivision (b) dependency jurisdiction"].)  The evidence before the juvenile court was thus sufficient to support the court's finding of substantial risk of harm to children of tender years.

As to appellants' challenge to the juvenile court's dispositional order, appellants argue only that the dispositional order cannot stand "in the absence of jurisdiction."  Because we find substantial evidence supports the jurisdiction order, we reject the argument that the disposition order must be reversed.

### DISPOSITION

The jurisdiction and disposition orders are affirmed.


RUBIN, P. J.

WE CONCUR:



BAKER, J.                    MOOR, J.


9